For affirmance, HUNT and LEONARD, CC. For reversal, LOTT, Ch. C., and GRAY and EARL, CC.

Judgment reversed, and judgment ordered for the plaintiff upon the verdict with costs.

---

B. NOBLE LEONARD, survivor of DANIEL L. GRAY, and B. NOBLE LEONARD, Respondent, *v.* WILLIAM A. FOWLER, Appellant.

Where goods are sold by sample, and there are no circumstances to qualify the transaction, there is a warranty that each package of the article shall correspond with the sample. But, if the goods sold consist of several varieties and qualities of the same article, and the sample is made by mixing proportional parts of the different varieties and qualities, the warranty is that the whole quantity, if mingled together, would be of a quality equal to the sample.

It is no breach of the warranty that some of the packages are inferior to the sample, so long as it fairly represented the whole.

Evidence of the value of the goods delivered, unconnected with evidence of the value of the sample, is immaterial, the question being the difference in values.

(Argued January 6th; decided May 1st, 1871.)

APPEAL from an order of the General Term of the Supreme Court, in the first judicial district, affirming a judgment entered upon a verdict in favor of the plaintiff.

The complaint alleged that on or about the 13th day of October, 1862, at the city of New York, De Forrest & Palmer sold and delivered to the defendant 3,844 $\frac{39}{62}$ bushels beans in barrels and bags at $2.25 per bushel, and thirteen bags at forty cents each, amounting together to the sum of $8,655.35, upon which the defendant paid at sundry times $8,000, leaving $655.35 and interest from October 18th, 1862, which balance the firm of which the plaintiff is the survivor purchased and were the owners of at the time of the commencement of this action. The answer admitted the sale of the beans and the sale of the unpaid balance, as alleged in the complaint, and, as defence to the action, alleged that the beans were warranted to be equal to a sample shown to the defendant at the time of the sale, and that they were not, but were in fact damaged; that he refused to accept them, of which the plaintiff had notice, and that the defendant had by reason of the breach of warranty sustained damages to the amount of the plaintiffs' claim. The plaintiffs, in reply, denied each and every other allegation in the answer, except the notice of damage to the beans, of the defendant's refusal to receive them; but alleged that such notice was not given until the purchase price was over due, and that the only representation or warranty made on the sale was that the beans were part equal to the highest grade, a sample of which was also exhibited on the sale, a part equal to the lowest, a sample of which was also exhibited at the sale, but taken together they were of a medium or average quality. The issue thus joined was tried at a circuit court held in the city and county of New York, in November, 1863. On the trial it appeared that on the 13th of October, 1862, the plaintiffs had in charge a large quantity of beans, the property of De Forrest & Palmer, for sale; that they consisted of some twenty different qualities and varieties, ranging from inferior to choice; that they exhibited to the purchasing agent of the defendant a sample of each kind and quality, and in his presence thoroughly mixed the several samples together into one common

mass, thus making an average sample of the several varieties and qualities; and by the sample thus made sold to the defendant the beans described in the complaint, all of which, except those constituting the sample, were at the time of the sale unmixed and in separate packages in store, and in that unmixed state they were all delivered to the defendant on and between the day of sale and the 25th of the same month. Upon the purchase thus made the defendant paid $4,000 on the 18th, and $2,000 on the 24th of the same month, and $2,000 on the 3d of the following month (November, 1862). Whether, by the contract of sale, the vendors were at liberty, in case the average quality of beans embraced in the sale should prove inferior to the sample, to make it good by substituting beans that would be equal to it, was a question upon which upon the trial there was a conflict in evidence, as there was also upon the question whether the beans as a whole were equal to the sample. There were, of the whole quantity, seventy-three barrels, containing 244 $\frac{53}{62}$ bushels, which the defendant insisted were worthless; and, on the 8th of November following the sale, he gave notice to the plaintiff that he had rejected them, and that they were in store at 59 Pearl street, at plaintiff's risk, which was the first notice the plaintiff had of any objection to the seventy-three barrels. On the same day the plaintiff replied that De Forrest & Palmer would hold him (the defendant) for the balance of the bill, $624.37. There was a conflict of evidence as to whether, if these seventy-three barrels were mixed with all the other beans included in the sale, the whole mass would be equal to the sample by which the sale was made. As to five of the seventy-three barrels, there was evidence tending to show, that they were mostly worthless; that one of the plaintiffs said he would make it satisfactory. It was also shown that, by the custom of the trade, when beans were rejected as not according with the sample, the rejection should be reported within three days. In the course of the trial, a witness, after testifying that the beans as a whole were not equal to the sample, were asked how much they were worth. The ques-

tion being objected to, was excluded, and the defendant excepted. The evidence being closed, the judge, in the course of his charge to the jury, among other things, charged them as follows : "It is in evidence that the sale was made by sample, and the rule is undoubtedly as laid down by the counsel for the defendant, that where the sale is by sample, and there are no circumstances to qualify the transaction that each package of the article sold must correspond in quality with the sample exhibited. For instance, if a number of bales of cotton are sold by sample, each bale must correspond with the sample of the cotton shown. So in case of wheat and other grain sold in different bins by a sample, the quantity of the grain in each bin must correspond with the sample exhibited. But not so, as I understand, when there are different varieties and different qualities of an article sold in mass, and when each particular variety or quality is sampled by taking a sample from each, and then mixing all the samples into one bulk, and that exhibited as representing the quality of the entire mass, when the whole should have been mingled together, so that if the sample represents the mass of the property sold when that shall have been mingled together into one bulk, why then there can be no breach of the warranty, as made by the exhibition of the sample. For instance, in the selling of these beans there is as good an illustration as I could have of this rule. Here are some packages of beans of the first quality, the kidney bean, if .you please. Then there are other packages of an inferior quality, and then, again, other packages which are alleged to be injured to some extent by being discolored ; and again, others that were decidedly injured for use, and not good for consumption. These samples were taken from each of these various qualities and varieties, as is claimed, and put into one box. Whether they were fairly sampled it will be for you to determine, because if these different varieties were not plainly sampled, and a fair sample of each and all exhibited to the defendant at the time of sale, then the plaintiffs were guilty of a fraud, and should be held to an account for it. But, assuming for

the present that three different varieties and qualities of beans were being sampled and all these various samples mingled into one box, you will see that the sample should represent the variety and quality of all the beans when they should be mingled in one large mass. If this large mass of beans did correspond with the samples thus mingled together and put into one sample, why, then, there occurs no breach of warranty." The court also charged the jury in substance that the defendant had the right to reject the seventy-three barrels of beans if, from the evidence, they should find that when mingled with the other beans sold the whole would be inferior to the sample provided by which they were sold, and after alluding to the five barrels of which it was claimed the plaintiffs had notice and promised to make satisfactory, remarked that there was no evidence that the plaintiff had any notice that any more were rejected; that it was the only evidence in the case that he recollected that any more were rejected until the letter of the 8th of November; that if the jury found that the defendant had the right to deduct the seventy-three barrels and the jury was of opinion that they were unsound, then that amount should be deducted. The charge being concluded, the defendant, by his counsel, took the following exceptions, viz. :

1st. To that part of the charge in which the court said "that the sample having been taken in this manner, it took the transaction out of the ordinary rules of warranty;" to which the court responded " that there was still a warranty that the mass of beans would correspond with the sample made up."

2d. To that part of the charge in which the court said that the value of the seventy-three barrels must be deducted.

3d. To that part of the charge in which the court said that the notice of the rejection was given on the 8th of November; to which the judge responded " that is a question of fact for the jury."

The jury rendered a verdict for the plaintiff for $662.05, being the full amount less the five barrels, and thereupon the court ordered judgment.

The defendant appealed to the General Term of the first district, where the judgment was approved. The defendant appealed to the Court of Appeals.

*William Henry Arnoux*, for the appellant, cited *Bierne* v. *Dord* (5 N. Y., 95); *Muller* v. *Eno* (14 N. Y., 597); *Gillespie* v. *Torrence* (25 N. Y., 306); *Passinger* v. *Thorburn* (34 N. Y., 93); *Voorhees* v. *Earl* (2 Hill, 288); *Cary* v. *Gruman* (4 Hill, 625); *Hoe* v. *Sanborn* (36 N. Y., 98); *Fay* v. *Grimstead* (10 Barb., 321).

*J. B. Bullock* and *Samuel Hand*, for the respondent.

GRAY, C. No error was committed in sustaining the objection to the question as to how much the beans sold were worth. The true inquiry was as to their value compared with the sample by which they were sold. They may have been worth much less than the price paid for them and yet fairly represented by the sample. The first exception to the charge was founded upon a misapprehension of what the charge was. It seems to have been founded upon the idea that the judge intended to instruct the jury that the principles concerning sales by samples was inapplicable to this case, whereas it was the reverse, and the illustration of the judge shows it to be so. If the second exception had been founded upon any fact stated by the judge, it would have given the plaintiff, and not the defendant, cause of complaint. A peremptory charge to deduct seventy-three barrels was what the defendant exacted and the plaintiff did not want. The third exception, as the same is stated, is an exception to a statement of the truth. The notice of rejection was given on the 8th November. Judgment must be affirmed.

HUNT, C. This is an action to recover the balance of the purchase price of a quantity of beans, sold in October, 1862. The defence alleges a sale by sample, and that a part of the bulk was not equal to the sample, claiming damages therefor.

The principal question upon the trial, was as to the nature of the warranty made on the sale. The defendant insisted that it was an ordinary sale by sample. The plaintiffs insisted that it was a sale by sample, with a warranty simply that the average of the bulk should be equal to the average of the sample. The sample was formed by selecting beans of various kinds and of various qualities from twenty different boxes, and mixing them into one mass. Of these specimens some were much more valuable than could be bought for the price given on this sale. Some were of an inferior quality, while still others were in a bad state of preservation. The average thus created, constituted an article which was sold at the price of $2.25 per bushel. The jury, I conclude, held the bargain to be as claimed by the plaintiff. The whole purchase price amounted to $8,655.35, of which $8,000 had been paid. The jury allowed the defendants for the value of five barrels of the beans, as not equal to the average and deducting their value from $655.35 gave the plaintiff a verdict for the balance with interest.

The first objection argued by the appellants arose upon the testimony of Mr. Goff, who testified as follows: "I took a sample on Thursday last of those beans from every package, and put together the entire sample. This is it. I saw the entire lot of those beans, 4,600, barrels. Q. What are the condition of those beans, upon an average, as compared with the sample that was given? A. As a whole they would not come up to the sample. I remember the particular barrels of beans spoken of that came from my place; there were considerable many that we would call blighted beans, they were sound but blighted, some of them would and some of them would not equal the sample, as a whole they would not. Those that came from our place would not equal the sample of Leonard & Gray. Q. How much are those goods worth as they were? Question objected to by plaintiff. Objection overruled and defendant excepts." Grammatically taken this question refers to the goods that "came from our place." It would not be contended, I think, that this question was com-

petent. I presume, however, that the defendant's counsel intended the question to apply to the entire lot, to wit, the 4,600 barrels, and wished to show that they were worth less than the price agreed to be paid for them. Assuming this, and assuming that the samples which he took "from every package," made a fair average of the packages, which he does not state, still the evidence was not competent. The question was not, what was the value of the beans purchased, but what was the difference in value between the article as furnished and the article as agreed to be furnished? The witness having stated that he was acquainted with the character of the samples, and had examined the articles delivered, and that the latter did not come up to the sample, the proper evidence then to be given, should have been of the difference in the value of the two articles. This was not to be determined by the value of the goods as delivered. The defendants might have made a very good bargain. If so they were entitled to the benefit of it. They could not be deprived of the advantage of the warranty, nor of their damages for its breach, by the fact that they had made an advantageous purchase. Neither are they thus to be lifted out of it, if they had made a poor bargain. The point to be determined was, not that of the then actual value, but of the difference in value. If the defendants had offered this proof in connection with the statement that it was purposed also to prove the value of the sample and to claim the difference in value, the case would have been different. They made no such offer, gave no intimation of such an intention, but apparently assumed that the real value of the article should be proved to the jury. They took a ruling upon the naked offer to prove the value of the article delivered, unconnected with the idea of proving also the value of the sample. (*Muller* v. *Eno,* 14 N. Y. R., 597.)

Neither was this evidence competent in the defendants' view of the case. The defendants claimed in their answer, that a part of the beans were not equal to the sample. Their efforts on the trial were directed to the precise point of proving the inferiority of seventy-three barrels. They did not

claim in their answer, that taking the whole 4,600 barrels together, it was not on the average equal to the sample; that is, that if the whole 4,600 barrels had been thrown into one mass and thoroughly mixed, the average value would have been less than that of the sample. Such was their theory of the case by their answer, and as practically conceded on the trial. They denied the sale of an average sample, but claimed a sale by sample strictly. By this rule every barrel must have been equal to the sample. Conceding that 4,527 barrels were equal to the sample, they insisted that seventy-three barrels were inferior. The question on this theory would have been the difference in value between the seventy-three barrels and the sample as shown. The evidence had already shown that five barrels were claimed to have been musty, and below the average. The jury adopted the plaintiffs view, that the sale was by an average, and deducting the five barrels, as not up to the average allowing nothing in their value gave a verdict for the price of the residue.

In any aspect, this evidence was not competent.

As to the law applicable to this subject generally, see *Muller* v. *Eno* (14 N. Y., 597); *Gillespie* v. *Torrance* (34 N. Y., 634); *Hoe* v. *Sanborn* (34 ib., 634).

Various objections are made to the charge of the judge, which do not require consideration. Some of them are founded upon a misunderstanding of the language of the judge, and none of them contain any error to the prejudice of the defendant.

The judgment should be affirmed, with costs.

All for affirmance, except LEONARD, C., not sitting.

Judgment affirmed with costs.